J-S32017-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.A.V. JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.V., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3702 EDA 2016 |

Appeal from the Order Entered October 3, 2016
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No: CP-51-AP-0000852-2016,
FID: 1-FN-466437-2009

BEFORE: GANTMAN, P.J., STABILE, and FITZGERALD[*], JJ.

MEMORANDUM BY STABILE, J.:                **FILED JULY 17, 2017**

J.V. ("Father") appeals from the decree entered on October 3, 2016, in the Court of Common Pleas of Philadelphia County, that involuntarily terminated his parental rights to his son, J.A.V., Jr. ("Child"), born in July of 2012.[1, 2]  We affirm.

The trial court made the following findings of fact, in relevant part.

---

[*] Former Justice specially assigned to the Superior Court.

[1] By separate decrees entered on October 3, 2016, the trial court involuntarily terminated the parental rights of A.D.M. ("Mother") and Unknown Father.  Neither Mother nor Unknown Father filed notices of appeal.

[2] The Child Advocate filed a brief in this appeal wherein it argues in support of the decree involuntarily terminating Father's parental rights.

Father was incarcerated less than one year after the birth of Child for robbery and drug[-]related offenses. On August 12, 2014, the Department of Human Services ("DHS") received a General Protective Services ("GPS") report alleging that Child and his brother, [G.M.][3], . . . were not properly supervised by Mother. The GPS also alleged that [Child and G.M.] were dirty and malodorous, that [their] home had very little food and an inoperable refrigerator.

. . . On August 26, 201[4], DHS visited Mother's home and advised her of the allegations of the GPS report. At the time of the visit, Child was with Mother. DHS advised Mother that the Child could not stay with her during the investigation of the GPS report. Child was transported from the Mother's home to stay with his Aunt and [G.M.].

On August 27, 2014, DHS obtained an order of Protective Custody ("OPC") for [Child and G.M.], who remained with Aunt. DHS learned that the Child had been taken to St. Christopher's Hospital Emergency Room on August 27, 2014, because the Child was vomiting and appeared extremely distressed. After an examination, hospital staff reported to DHS that the Child was behind on his routine medical care; appeared malnourished; and the Child was diagnosed with a genital fungus. . . .

On February 11, 2016, [Community Umbrella Agency ("CUA")] NET revised the SCP objectives for Father who was still incarcerated. The [Single Case Plan ("SCP")] objectives for Father were (1) to participate in case by phone; (2) to provide documentation for anger management classes upon completion; (3) to provide documentation for an education program; and (4) to provide documentation for General Equivalency Diploma ("GED") classes upon completion in prison. . . .

Trial Court Opinion, 1/11/17, at 2-3 (citations to record omitted).

On September 16, 2016, DHS filed a petition for the involuntary

termination of Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1),

---

[3] G.M. is Child's half-brother. He is not the biological child of Father. Therefore, G.M. is not a subject of this appeal.

(2), (5), (8), and (b). A hearing occurred on October 3, 2016, during which DHS presented the testimony of Miriam Colon, the CUA case manager. Father testified on his own behalf *via* telephone from State Correctional Institution ("SCI") Huntingdon. Specifically, Father testified he is serving a sentence of incarceration of ten and one-half to 25 years for convictions related to robbery and possession with intent to deliver illegal drugs. N.T., 10/3/16, at 32-33. He testified that he had served fourteen years of this sentence.[4] *Id.* at 33. Father testified that he will be paroled to a halfway house on October 24, 2016. *Id.* at 29.

By decree entered on October 3, 2016, the trial court involuntarily terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (b). On November 30, 2016, Father filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pennsylvania Rules of Appellate Procedure 1925(a)(2)(i) and (b).[5]

_____

[4] The record reveals that Father was sentenced in October of 1999. *See* N.T., 10/3/16, at DHS Exhibit 2. There is no dispute that Father was released from prison for an unspecified period of time, up to and including Child's sixth month of life.

[5] Father's appeal is timely for the following reasons. *See* Pa.R.A.P. 903(a) (providing "the notice of appeal . . . shall be filed within 30 days after the entry of the order from which the appeal is taken"). By order filed on October 28, 2016, the trial court granted Father's motion to vacate counsel and appoint new counsel. By order dated November 15, 2016, the trial court appointed counsel for Father for appeal purposes only. On November 17, 2016, Father's newly appointed counsel filed a motion for leave to file an

*(Footnote Continued Next Page)*

On appeal, Father raises the following issues for our review.

1. Did . . . DHS sustain the burden that Father's rights should be terminated when there was evidence that Father had completed and/or had been actively completing [his] permanency goals?

2. Was there . . . sufficient evidence presented to establish that it was in the best interest of the child to terminate Father's parental rights?

Father's Brief at 4.

Our standard of review is as follows:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act ("Act"), 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

*(Footnote Continued)* ————————————

appeal *nunc pro tunc*, which the trial court granted by order dated November 22, 2016.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

We need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In this case, we conclude that the certified record supports the decree pursuant to Section 2511(a)(1) and (b), which provides as follows.

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

. . .

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be

beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b).

With respect to Section 2511(a)(1), this Court has explained "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citing *In re Adoption of R.J.S.*, 901 A.2d 502, 510 (Pa. Super. 2006)). Further,

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*Id.* (quoting *In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1998)).

In *In re Adoption of S.P.*, *supra*, our Supreme Court discussed *In re Adoption of McCray*, 331 A.2d 652 (Pa. 1975), a case wherein the Court considered termination of parental rights of incarcerated persons involving abandonment, which is currently codified at Section 2511(a)(1). The *S.P.*, the Court stated:

- 6 -

Applying in **McCray** the provision for termination of parental rights based upon abandonment, now codified as § 2511(a)(1), we noted that a parent "has an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child." **Id.** at 655. We observed that the father's incarceration made his performance of this duty "more difficult." **Id.**

**In re Adoption of S.P.**, 47 A.3d at 828. The **S.P.**, the Court continued:

[A] parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment. Nevertheless, we are not willing to completely toll a parent's responsibilities during his or her incarceration. *Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child.* Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.

[**McCray**] at 655 (footnotes and internal quotation marks omitted). . . .

**In re Adoption of S.P.**, **supra** (emphasis added).

With respect to Section 2511(b), this Court has stated that, "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." **In re C.M.S.**, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). Further, the trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." **Id**. (citation omitted). However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily

depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008) (citation omitted).

On appeal, Father contends with respect to Section 2511(a)(1) that DHS failed to satisfy its burden of proof because he complied with his SCP objective related to parenting classes, and he was working toward satisfying his remaining objectives. Father's Brief at 10. Further, Father asserts that DHS failed to make reasonable efforts to reunify him with Child because DHS did not schedule visits between him and Child in prison. *Id.* at 11. We are unpersuaded by Father's contentions.

The trial court found that Father has failed to perform his parental duties, as follows.

> The CUA Case Manager testified on October 3, 2016 that Father had been incarcerated since 2012. The CUA Manager had met Father at prison and had informed Father of his . . . SCP objectives. The CUA Manager testified that Father had no relationship with the Child prior to incarceration; had never reached out to the Child; the Father had never sent letters to the Child nor requested that the Child visit him at prison. The record also demonstrated that Father had been incarcerated since the Child was six months old and . . . had no documented or concrete plan as to future housing and employment.

Trial Court Opinion, 1/11/17, at 5-6 (citations to record omitted). The testimonial evidence supports the court's findings.

Miriam Colon, the CUA case manager, testified that, pursuant to his SCP objectives, Father obtained his GED, and he "completed [a] violence prevention workshop and his parenting." N.T., 10/3/16, at 23. However, Ms. Colon testified that Father has never reached out to Child since his

incarceration. *Id.* at 23-24. Father has never sent Child any letters or birthday cards, and he has never requested visits with Child. *Id.* at 23. In short, Ms. Colon testified that Father does not have a relationship with Child. *Id.*

Father testified that Child was six months old when Father was incarcerated. *Id.* at 33. Father testified that Child was in placement for approximately a year and one-half before Father learned that Child was removed from Mother. *Id.* at 29. He testified that a caseworker prior to Ms. Colon told him he could have no contact with Child. *Id.* at 31. When he met Ms. Colon in prison, Father testified "I didn't ask her [if I could have contact with Child] because I was told before that I can't have no contact with him while I was in here." *Id.*

Based on the foregoing testimonial evidence, we discern no abuse of discretion by the trial court in concluding that Father has failed to perform his parental duties far in excess of the requisite six-month period preceding the filing of the termination petition. The record demonstrates that Father easily yielded to the obstacles posed by his imprisonment in maintaining a relationship with Child. Indeed, contrary to his parental responsibility while in prison, Father made no effort to communicate or associate with Child. *See In re Adoption of S.P.*, *supra*.

Moreover, we reject Father's contention that DHS did not satisfy its burden of proof regarding the termination of his parental rights because it

failed to make reasonable efforts to reunify him with Child. In **In re D.C.D.**, 105 A.3d 662 (Pa. 2014), our Supreme Court held that this Court erred in reversing the order terminating the father's parental rights under Section 2511(a)(2) due to the failure of the agency to provide reasonable efforts to reunify him with his child. The Court concluded, in part, that no "Pennsylvania or federal provision requires delaying permanency for a child due to the failure of an agency to provide reasonable services, when a court has otherwise held that grounds for termination have been established and the court has determined that termination is in the best interests of the child by clear and convincing evidence." **Id.** at 676.

We conclude **D.C.D.** controls in this matter because, like Section 2511(a)(2), the plain language of Section 2511(a)(1) does not require a court to deny an involuntary termination petition based solely on the failure of an agency to provide reasonable reunification services.[6] Therefore, Father's first issue on appeal fails.[7]

In his second issue, Father contends that the record evidence was insufficient to support termination under Section 2511(b). Specifically, he

---

[6] It is important to note that, in rejecting Father's contention pursuant to **In re D.C.D.**, **supra**, we make no determination regarding whether DHS made reasonable reunification efforts in this case.

[7] Based on this disposition, we need not consider Father's claims with respect to Section 2511(a)(2). **See In re B.L.W.**, **supra**.

asserts that DHS "never testified there was not a relationship between father and his child. . . . There was no bonding evaluation performed in this matter." Father's Brief at 13.[8] Father's claim is without merit.

As stated above, Ms. Colon clearly testified that no relationship exists between Father and Child. N.T., 10/3/16, at 23. Indeed, Child was four years old at the time of the subject proceedings. Because the record demonstrates that Father had not seen or contacted Child since he was, at most, six months old, when Father was incarcerated, it is unreasonable to believe that a relationship could exist between them.

Further, we reject Father's assertion that the evidence was insufficient because it did not include a bonding evaluation. It is well-settled that, when evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." **In re Z.P.**, 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). Moreover, because there is no evidence in this case that a bond exists between Father and Child, it was reasonable for the court to infer that none does. **See In re K.Z.S.**, **supra**.

Upon thorough review, the testimonial evidence overwhelmingly supports the trial court's conclusion that involuntarily terminating Father's

---

[8] We observe that, unlike the other pages in Father's brief, this one is unpaginated.

parental rights will serve the developmental, physical, and emotional needs and welfare of Child. Accordingly, we affirm the decree pursuant to 23 Pa.C.S. § 2511(a)(1) and (b).

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/2017